IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Auto-Owners Insurance Company, | ) | Civil Action No.: 4:12-cv-00447-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| John Henry Newsome, III, and Yvonne Robinson, Individually and as the Personal Representative of the Estate of Deagose F. Robinson, deceased, | ) ) ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | **ORDER** |
| of whom | ) | |
| | ) | |
| John Newsome, III, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| South Carolina Automobile Dealers Association Self Insured Fund and the Randolph W. Hope Company, Inc., | ) ) ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |

Plaintiff Auto-Owners Insurance Company ("Auto-Owners") filed this declaratory judgment action seeking a declaration that various policies of insurance entered into between Auto-Owners and Newsome Management, Inc. ("NMI") do not provide liability coverage for Defendant John Newsome, III ("Mr. Newsome III") in a pending state court action. This matter is before the Court on a number of motions filed by Auto-Owners and Defendant Yvonne Robinson ("Ms. Robinson"). On June 12, 2013, the Court heard oral arguments from all parties regarding these motions. For the reasons discussed below, the Court rules on the pending motions as follows: (1) Ms. Robinson's

Motion for Enlargement of Time to Identify Witnesses or to Modify Scheduling Order is granted; (2) Auto-Owners's Motion for Summary Judgment is granted in part and denied in part; (3) the Court reserves ruling on Auto-Owners's Motion to Strike Ms. Robinson's Jury Demand; and (4) Auto-Owners's Motion in Limine is denied *without prejudice*.

## Undisputed Facts

This is a declaratory judgment action involving a determination of whether liability insurance coverage exists for Mr. Newsome III in connection with a wrongful death action filed in the Court of Common Pleas for the Fourth Judicial Circuit in Darlington County, South Carolina, captioned *Yvonne Robinson, Individually and as the Personal Representative of the Estate of Deagose F. Robinson, Deceased v. John Henry Newsom, III*, No. 2010-CP-16-295 ("Underlying Action").

### I.     Underlying Action

In May 2010, Ms. Robinson filed the Underlying Action alleging that on or about October 7, 2009, Deagose F. Robinson ("Mr. Robinson") was a passenger in a boat driven by Mr. Newsome III on Lake Prestwood. Ms. Robinson filed the Underlying Action individually and as personal representative of Mr. Robinson's estate. The complaint filed in the Underlying Action alleged that Mr. Newsome III was driving the boat in an erratic and unsafe manner when Mr. Newsome III and Mr. Robinson were thrown into the water. Mr. Robinson ultimately drowned. Mr. Newsome III tendered the claim to Auto-Owners for defense and indemnification. Auto-Owners agreed to defend the Underlying Lawsuit under a reservation of rights.

### II.    Policies at Issue

Auto-Owners issued three policies to NMI that were in effect at the time of Mr. Robinson's accident. During the hearing on this matter, counsel for all parties conceded that coverage was

unavailable under either the liability policy identified as number 36052741-09 ("Commercial General Policy"), and a commercial umbrella policy identified as number 44-052-741-01 ("Umbrella Policy"). Therefore, the parties agree that the only policy still at issue in this case is a garage liability policy identified as number 44-052-741-00 ("Garage Policy"). [*See* Garage Policy, Docs. # 1-1, 1-2.] In addition to NMI, the named insureds under the Garage Policy include John Newsome, Inc. ("JNI") and John H. Newsome, Jr. ("Mr. Newsome Jr."). [*See* Form 59270, Doc. # 1-3.] Mr. Newsome III is not a named insured.

The Garage Policy specifically provides coverage for "those sums that [an insured] become[s] legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." [Garage Policy, Doc. # 1-1, at 19.] The Policy defines insured as follows:

> 1. If you are designated in the Declarations . . . .
> . . . .
> 2. Each of the following is also an insured:
>
>    a. Your employees, . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . . However, none of these employees . . . are insureds for bodily injury . . .
>
>       (1) . . . to a co-employee while in the course of his or her employment or performing duties related to the conduct of your business . . . .

[*Id.*, Doc. # 1-2, at 2.] The Policy also contains the following relevant exclusions:

> This insurance does not apply to:
> . . . .
>  (2) Bodily injury to:
>
>    (a) An employee of the insured arising out of and in the course of employment by the insured . . . .

3

> . . . .
>
> (3) Bodily Injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading and loading or unloading.
> . . . .
>
> This exclusion does not apply to:
> . . . .
>
> (c) Any watercraft while being serviced or repaired by any insured.

[*Id.*, Doc. # 1-1, at 24.]

**Discussion**

For purposes of clarity and defining the contents of the record, the Court will begin its discussion with Ms. Robinson's Motion for Enlargement of Time to Identify Witnesses or to Modify Scheduling Order.

**I.      Motion for Enlargement of Time [Doc. # 61]**

Ms. Robinson seeks to supplement her discovery responses to include as witnesses South Carolina Department of Natural Resources Officers Anthony C. Godowns and Andre Thompson. Officers Godowns and Thompson responded to the scene of the accident where Mr. Robinson died. Ms. Robinson disclosed these witnesses shortly after the deadline in the scheduling order for conclusion of discovery. The Court grants Ms. Robinson's Motion for Enlargement.[1]

---

[1] Auto-Owners's Response to Ms. Robinson's Motion for Enlargement focused on Federal Rules of Civil Procedure 37 and 16. However, for the first time at oral argument, Auto-Owners claimed that the excusable neglect standard from Rule 6(b) applied to Ms. Robinson's Motion. Under Rule 6(b)(1)(B), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . on motion made after the time has expired if the party failed to act because of excusable neglect." In spite of Auto-

4

**A.     Standard of Review**

Under Federal Rule of Civil Procedure 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Fourth Circuit has looked to five factors in determining whether a failure is "substantially justified:" (1) surprise to opposing party; (2) ability to cure surprise; (3) extent to which allowing evidence would disrupt trial; (4) importance of evidence; and (5) explanation for failure to disclose. *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).

Alternatively, Ms. Robinson seeks to modify the scheduling order. A scheduling order may be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" standard for modification "focuses on the diligence of the party seeking leave to modify the

---

Owners's invocation of Rule 6(b), Rule 37 plainly allows the Court to permit a party to use belatedly disclosed witnesses if the failure to disclose is "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Further, to the extent Ms. Robinson seeks modification of the scheduling order, other courts in this Circuit have held that "[t]he good cause modification provision specific to Rule 16(b)(4) takes precedence over the generally applicable extension provisions of Rule 6(b)(1)." *Everhart v. Washington Metro, Area Transit Auth.*, No. DKC 11–2155, 2012 WL 6136732, at *2 (D. Md. Dec. 12, 2012) (quoting *Richardson v. United States*, No. 5:08–CV–620–D, 2010 WL 3855193, at *3 (E.D.N.C. Sept. 30, 2010)); *see also Neighbors Law Firm, P.C. v. Highland Capital Mgt., L.P.*, No. 5:09–CV–352–F, 2011 WL 238605, at *2 (E.D.N.C. Jan. 24, 2011) (holding that Rule 16(b)(4) governs disposition of a motion for leave to file a summary judgment motion after expiration of the scheduling order's dispositive motions deadline). Even if this Court were to apply the excusable neglect standard, the Court notes that the standard would be met here because (1) extending the scheduling order to allow depositions eliminates any danger of prejudice to Auto-Owners; (2) the length of delay is minor and the case is currently under a stay; (3) there is good reason for the delay as the witnesses were discovered shortly before they were disclosed; and (4) Ms. Robinson acted in good faith by diligently seeking to uncover the officers' identities. *See Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996).

scheduling order." *Dilmar Oil Co, Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997). "Good cause" typically means that "scheduling deadlines cannot be met despite a party's diligent efforts." *Id*.

### B.     Analysis

The Court will allow Ms. Robinson to disclose these witnesses, though it will also expand the scheduling order to allow Auto-Owners and Mr. Newsome III an opportunity to depose the witnesses.

Under Rule 37, Ms. Robinson's failure to identify the officers within the applicable time period was substantially justified. The factors articulated by the Fourth Circuit support this finding. *See Sherwin-Williams*, 318 F.3d at 596. First, the content of the officers' statements should come as little surprise to Auto-Owners. In October 2012, within the discovery window, Mrs. Robinson's counsel produced to Auto-Owners a file from the Darlington County Solicitor's Office. A portion of that file reported a conversation between Mr. Newsome III and officers identified only as "DNR LE" who heard Mr. Newsome III say Mr. Robinson was on the boat only for a "joy ride." [Solicitor's Note, Doc. # 61-3.] While the file apparently did not make clear to whom these statements were made, several officers were referenced in the file. Auto-Owners admitted at the hearing that Officers Godowns and Thompson were among these names.

Second, to the extent there is any surprise, such a surprise will be cured by this Court enlarging the scheduling order to allow Auto-Owners an opportunity to depose Officers Godowns and Thompson. Further, this evidence will not disrupt the trial in this case as a stay is currently in place and no jury has been selected in this matter.

Third, the evidence is critically important and Ms. Robinson has adequately explained her

late disclosure. Of critical importance in this case is the issue of whether Mr. Robinson was acting within the course of his employment on the date of the accident. Because Mr. Robinson is deceased and Mr. Newsome III has invoked the Fifth Amendment and refused to answer questions about this accident, his statements to the law enforcement officers is the best, if not only, first-hand account of the events surrounding the accident. Additionally, while Ms. Robinson had the Solicitor's File when this action was filed in February 2012, it was unclear which specific officers spoke with Mr. Newsome III. Counsel represented to the Court that after attempting to locate the information on their own, they ultimately hired a private investigator who in late January 2013 discovered which officers spoke with Mr. Newsome III. Counsel then interviewed the officers and disclosed their identities in late February. This case, as expressed by the lawyers at the hearing, has had an arduous and tortured history. Based on what was expressed to the Court at the hearing, Ms. Robinson's counsel was diligent in their efforts in trying to discover the specific officers involved in the "joy ride" statement.

Even if Ms. Robinson's failure to disclose was not substantially justified, it is harmless. Auto-Owners knew about the substance of Mr. Newsome III's statements to the officers within the discovery period, and this Court's extension of the scheduling order will allow the parties an opportunity to depose the officers. Alternatively, for the reasons stated above, the Court finds that Ms. Robinson has shown good cause for extending the scheduling order under Rule 16. The Court therefore grants Ms. Robinson's Motion for Enlargement and modifies the scheduling order, to include a mediation requirement, as outlined in the Conclusion of this Order.

**II.    Motion for Summary Judgment [Doc. # 56]**

For the reasons discussed below, the Court grants in part, and denies in part, Auto-Owners's

Motion for Summary Judgment.

### A.     Standard of Review

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986) (holding that summary judgment is not "a disfavored procedural shortcut;" rather, it is an important mechanism for weeding out "claims and defenses [that] have no factual bases").

If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Regarding insurance policies specifically, South Carolina law construes insurance policies in favor of coverage and the duty to defend[2] is triggered where the underlying complaint includes *any allegation* that raises the possibility of coverage. *See, e.g.*, *M & M Corp. of S.C. v. Auto-Owners*

---

[2] Auto-Owners's Complaint seeks a declaratory judgment that it had no duty to defend or to indemnify Mr. Newsome III. [*See* Compl., Doc. # 1.] To the extent Auto Owners's Motion for Summary Judgment seeks a ruling that there was no duty to indemnify as a matter of law, the factual issues discussed herein particularly advise against such a legal conclusion. *See, e.g.*, *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004). ("[A]n insurer's duty to indemnify will depend on resolution of facts alleged in the complaint . . . .").

8

*Ins. Co.*, 390 S.C. 255, 259, 701 S.E.2d 33, 35 (2010). For purposes of determining whether an insurer has a duty to defend, "the allegations in the [underlying complaint] must be applied to the policy in its entirety, which necessarily includes the exclusions section." *USAA Prop. and Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 657, 661 S.E.2d 791, 798 (2008). Further an insurer's duty to defend is determined by the allegations made in the complaint and "facts outside of the complaint that are known by the insurer." *Graphic Arts Mut. Ins. Co. v. Caldwell Chevrolet, Inc.*, No. 0:11–01255, 2013 WL 314450, at *3 (D.S.C. Jan. 25, 2013) (quoting *Clegg*, 377 S.C. at 657, 661 S.E.2d at 798).

However, this does not change the fundamental precepts of South Carolina law that insurance polices are subject "to the general rules of contract construction," that the insurer bears the burden of establishing an exclusion's applicability, and that all exclusions of coverage are to be "most strongly" construed against the insurer. *See Owners Ins. Co. v. Clayton*, 364 S.C. 555, 560, 614 S.E.2d 611, 614 (2005); *M & M Corp.*, 390 S.C. at 259, 701 S.E.2d at 35.

### B.    Analysis

The Court reiterates that all parties to the case agree that coverage is unavailable in this matter under the Commercial General Policy and the Umbrella Policy. For this reason, and for the reasons stated by Auto-Owners in its Motion for Summary Judgment with respect to these two policies, the Court grants the Motion for Summary Judgment and finds that there is no coverage under either the Commercial General Policy or the Umbrella Policy.

As to the Garage Policy, summary judgment is not appropriate on the issue of whether Auto-Owners had a duty to defend or to indemnify Mr. Newsome III in the Underlying Action. Auto-Owners makes two central arguments in favor of summary judgment: (1) that Mr. Newsome III is not insured under the policy because both he and Mr. Robinson were acting within the scope of their

employment; and (2) that the Garage Policy's watercraft exclusion bars coverage. The Court will address each argument in turn.[3]

### 1. Course of Employment

As an initial matter, the Court finds that Mr. Newsome III was acting within the scope of his employment at the time of the accident at issue. All parties appeared to concede at the hearing in this matter that Mr. Newsome III was acting within the scope of his employment, and the parties at least conceded that there was no evidence in the record to contradict this finding. Thus, under the Garage Policy, Mr. Newsome III fits the definition of an insured so long as he did not cause bodily injury "to a co-employee while in the course of his or her employment . . . ." [*See* Garage Policy, Doc. # 1-2, at 2.]

In other words, if Mr. Robinson was also acting within the course of his employment, then there would be no coverage under the Garage Policy as Mr. Newsome III would fail to fit the definition of an insured. On the order hand, if Mr. Robinson was not acting within the course of his

---

[3] Auto-Owners appears to raise the argument that it had no duty to defend because the Complaint was silent as to whether Mr. Robinson was acting within the course of his employment at the time of the accident and the Complaint did not state the watercraft was being serviced or repaired, an exception to the watercraft exclusion. However, the Complaint's silence on these two points also indicates that Mr. Robinson may not have been acting within the scope of his employment and that the watercraft may have been test-driven as part of a "service or repair." As the Fourth Circuit has explained when applying similar substantive law, "[i]f a complaint, however ambiguous, may be read as premising liability on alternative grounds, and either ground states liability potentially or arguably covered by the policy, the insured is entitled to a defense." *Donnelly v. Transp. Ins. Co.*, 589 F.2d 761, 767 (4th Cir. 1978). Further, the Court must also look to the facts known by Auto-Owners, which appear to include the nature of Mr. Robinson's work and the reasons the watercraft was on the lake. As the South Carolina Supreme Court has ruled, "[t]he instant case provides such a scenario given [the insurance company] presented additional facts at the declaratory judgment stage that were not initially known to [the underlying plaintiff] at the time she filed her Complaints." *Clegg*, 377 S.C. at 657–58, 661 S.E.2d at 798.

employment at the time of the accident, then Mr. Newsome III would qualify as an insured under the Garage Policy. The Court finds there is a genuine dispute of fact as to whether or not Mr. Robinson was acting within the course of his employment while he was riding aboard the watercraft on Lake Prestwood.[4]

First, Mr. Newsome Jr. testified under oath that Mr. Robinson's primary area of responsibility as washing or otherwise cleaning vehicles. [*See* Newsome Jr. Dep., Doc. # 58-13, at 8:7–21.]

Second, JNI employee Virginia Adams filed a sworn affidavit indicating that Mr. Robinson's primary job was to clean and prepare vehicle and watercraft for display at the dealership. [*See* Adams Aff., Doc. # 57-1, at ¶ 4.][5]

Third, Mr. Robinson's time card shows he clocked in from lunch at 1:58 p.m. and clocked out at 5 p.m. [*See* Time Card, Doc. # 58-14.] However, Mr. Robinson's death certificate states he died at 3 p.m. [*See* Death Cert., Doc. # 58-16 (indicating that it was "unknown" whether Mr. Robinson was injured at work).] Ms. Adams claims she entered Mr. Robinson's final time card

---

[4] In 2011, the Honorable Margaret B. Seymour granted summary judgment for an insurance company in a related declaratory judgment action regarding a policy covering the boat at issue in this case. *See Am. Modern Home Ins. Co. v. Newsome et al.*, No. 2:10-CV-0505-MBS, Doc. # 67 (D.S.C. filed May 3, 2011) ("American Modern Action"). The Court notes that, contrary to Auto-Owners's implication, this case did not address whether Mr. Robinson was acting within the course of his employment at the time of the accident. Judge Seymour merely explained in her "Background" section that Mr. Robinson was an employee of JNI. *Id.* However, no party disputes that JNI was Mr. Robinson's employer. The issue in this case is whether Mr. Robinson, a JNI employee, was acting in the course of that employment at the time of the boating accident at issue.

[5] Auto-Owners seems to argue that the Court cannot consider Ms. Adams' affidavit because the statements are not based on personal knowledge. However, in her sworn affidavit she swears that she was an employee of the dealership and speaks about the job of a fellow employee.

entry. [*See* Adams Aff., Doc. # 57-1, at ¶ 15.] Ms. Robinson argues that someone other than Mr. Robinson also applied other October 7, 2009, time stamps, particularly the time stamp clocking Mr. Robinson in from lunch.[6] Certainly, Mr. Robinson's time card makes it unclear whether Mr. Robinson himself clocked in and out on October 7, 2009, and it is thus unclear whether Mr. Robinson was on the clock when he was aboard the watercraft.

Fourth, Officer Godowns's affidavit states that Mr. Newsome III told him that Mr. Robinson was on the boat to "enjoy a joy ride." [*See* Godowns Aff. Doc. # 58-17, at ¶ 6.] Mr. Newsome III's statement to Officer Godowns is further evidence that Mr. Robinson was outside the course of his employment while aboard the watercraft. In addition to arguing that Officer Godowns's disclosure is untimely, which this Court addressed above, Auto-Owners argues that the statement within Officer Godowns's affidavit constitutes inadmissible hearsay. The Court rejects Auto-Owners's hearsay argument.[7]

---

[6] By way of affidavit Ms. Robinson argues her husband never clocked back in from lunch, arguing that she heard her husband order lunch after 2 p.m., when he had supposedly clocked back in. Auto-Owners argues that Ms. Robinson's affidavit consists of inadmissible hearsay and is a violation of South Carolina's Dead Man Statute. *See* S.C. Code Ann. §19-11-20 (prohibiting any interested person from testifying concerning conversations or transactions with the decedent if the testimony could affect his or her interest). The Court agrees that Ms. Robinson's affidavit could present both hearsay problems and issues under the Dead Man's Statute. Therefore, out of an abundance of caution, the Court has not considered Ms. Robinson's affidavit in reaching its decision to deny Auto-Owners's Summary Judgment Motion.

[7] At the hearing on this matter, both parties approached this potential hearsay issue under the present sense impression exception. *See* Fed. R. Evid. 803(1). Officer Godowns's deposition has yet to be taken. His affidavit does not specify whether Mr. Newsome III's statement was made to Officer Godowns "while or immediately after the declarant perceived it" and it is thus unclear whether the statement would constitute a present sense impression. *See* Fed. R. Evid. 803(1). However, it does appear that the statement was made some time shortly after the accident.

One, the statement is not hearsay as it is being offered as the admission of a party-opponent. *See* Fed. R. Evid. 801(d)(2). While Mr. Newsome III is Ms. Robinson's co-Defendant in the current action, he is the opponent in the Underlying Action. Moreover, at least in the criminal context, courts in other circuits have held this type of co-defendant testimony to be admissible under Rule 801. In *United States v. Palow*, 777 F.2d 52, 55 (1st Cir. 1985), the Court explained as follows:

> The requirement of Rule 801(d)(2)(A) that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them. *See* 4 Wigmore, Evidence § 1048, p. 5 (Chadbourn rev. 1972). Rule 801(d)(2)(A) simply requires that the admission at issue be contrary to a party's position at trial. *Butler v. Southern Pacific Co.*, 431 F.2d 77, 80 (5th Cir. 1970), cert. denied, 401 U.S. 975 (1971). It does not matter that the admission has been introduced through the testimony of a co-defendant testifying on his own behalf. *United States v. Ramirez*, 710 F.2d 535, 547 (9th Cir. 1983).

Here, Ms. Robinson is offering the statement of Mr. Newsome III and not her own statement or the statement of her husband. Further, the statement of Mr. Newsome III is certainly contrary to his position that both he and Mr. Robinson were acting within the scope of their employment at the time of the accident.

Further, even if the party-admission rule were not applicable and Mr. Newsome III's statement constituted hearsay, the Court finds it is also admissible under the residual exception contained in Rule 807. Specifically, the statement has "circumstantial guarantees of trustworthiness" as it was made to a third-party law enforcement officer shortly after the boating accident. The statement at least has as much trustworthiness as a statement of a party opponent. Additionally, the statement is also being offered as evidence of a material fact – whether Mr. Robinson was acting within the course of his employment – and it is the most probative evidence on this point given that the only other person on the boat, Mr. Newsome III, has refused to testify. For these reasons, admitting the statement would also serve "the purposes of [the Rules of Evidence] and the interests

of justice." *See* Fed. R. Evid. 807(a).

The Court also notes that even if it were to exclude Officer Godowns's affidavit, the remaining facts above – taken in a light most favorable to Ms. Robinson – show that there is a genuine dispute of fact as to whether Mr. Robinson was acting within the course of his employment at the time of his accident aboard the watercraft. The inclusion of Officer Godowns's affidavit simply bolsters this finding.

### 2.     **Watercraft Exclusion**

The Court also rejects Auto-Owners's argument that the Garage Policy's watercraft exclusion bars coverage as a matter of law in this case. The watercraft exclusion specifically bars coverage for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading and loading or unloading." [Garage Policy, Doc. # 1-1, at 24.] Here, it is undisputed and fully supported by the record that the vessel at issue was a watercraft. Further, the watercraft was owned by JNI,[8] a named insured under the Garage Policy. [*See* Form 59270, Doc. # 1-3.] However, this does not end the Court's inquiry.

The Garage Policy's watercraft exclusion contains a specific exception indicating that "[t]his

---

[8] To the extent Ms. Robinson appears to challenge whether there was a dispute of fact as to who owned the boat, the Court finds this argument without merit. In the American Modern Action, Judge Seymour found that the policy, issued by American Modern Home Insurance Company, was void because the application contained several material misrepresentations. *Am. Modern Home Ins. Co. v. Newsome et al.*, No. 2:10-CV-0505-MBS, Doc. # 67, at 7–8. (D.S.C. filed May 3, 2011). Judge Seymour specifically ruled that JNI purchased the boat and always held title to it, and that although the application said the boat would not be used for commercial purposes, the "entire purpose" of purchasing the boat was to repair it and sell it for profit. *Id.* at 8. While Auto-Owners was not a party to the American Modern Action, both Mr. Newsome III and the Estate of Mr. Robinson were defendants in that action, and no party appealed Judge Seymour's order.

14

exclusion does not apply to . . . [a]ny watercraft while being *serviced or repaired* by any insured." [Garage Policy, Doc. # 1-1, at 24 (emphasis added).]

It appears undisputed that the watercraft was being operated on the lake at the time of the accident. It is also clear from the record that the boat was being operated on the lake subsequent to major engine repairs. [*See* Repair Invoices, Doc. # 42-4, at 6–17 (chronicling extensive engine repairs); Adams Aff., Doc. # 57-1, at ¶ 8 (stating that the watercraft was taken to Lake Prestwood as part of servicing the mechanical operation of the engines); Godowns Aff. Doc. # 58-17, at ¶ 6 (stating that Mr. Newsome III said he was taking the boat on a test ride).]

Auto-Owners argues that the exception to the exclusion is not applicable to this matter because the watercraft was being "operated," and not "serviced or repaired," at the time of Mr. Robinson's death. Auto-Owners points to the language of the watercraft exclusion specifically barring coverage for any "use" of the watercraft, and also points out that "use" is defined to include operation. Thus, according to Auto-Owners, "the Garage Policy contemplates providing coverage in the event an injury takes place while the watercraft is being 'serviced or repaired.' but it does not provide coverage while the watercraft is in 'operation.'" [Mot. for Summ. J, Doc. # 56, at 29.] Auto-Owners clarified at the hearing in this matter that, under their interpretation of the exclusion, the "service or repair" exception only contemplates service or repair at the shop and does not contemplate a test drive on a lake.

However, as Auto-Owners itself notes, "[t]he meaning of a particular word of phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract." *Schulmeyer v. State Farm Fire & Cas Co.*, 353 S.C. 491, 496, 579 S.E.2d 132, 134 (2003). Here, neither service nor repair are

defined in the Garage Policy. Further, the "service or repair" exception is specifically enumerated beneath watercraft exclusion, and the watercraft exclusion is only applicable when a watercraft is being used or maintained. It would read the exception out of existence to say it does not apply when the watercraft is in use.

Therefore, at this juncture in the case and in construing the exclusion "most strongly" against the insurer, the Court cannot say as a matter of law that the watercraft *was not* being "serviced or repaired" at the time of the accident. And again, there is no evidence to contradict that Mr. Newsome III was acting within the scope of his employment at the time of the boating accident.

### III.     Motion to Strike Jury Demand [Doc. # 75]

Auto-Owners seeks to strike Ms. Robinson's jury demand arguing that she has no right to a jury trial under the Federal Declaratory Judgment Act ("FDJA"). The Court reserves ruling on Auto-Owners's Motion to Strike.

#### A.     Standard of Review

It is well-settled that, in declaratory judgment actions brought in federal courts, federal law determines whether there exists a right to a jury trial. *See Simler v. Conner*, 372 U.S. 221, 222 (1963). This proposition is true whether jurisdiction is based on diversity or another basis. *Id*. The right to a jury trial in a matter brought under the FDJA depends upon "whether there would have been a right to a jury trial had the action proceeding without the declaratory judgment vehicle." *In re Lockheed Martin Corp*., 503 F.3d 351, 355 (4th Cir. 2007) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959)); *see also* Fed. R. Civ. P. 57 (indicating that Rules 38 and 39 govern a party's demand for a jury trial); Fed. R. Civ. P. 38(b) ("On any issue triable of right by a jury, a party may demand a jury trial by jury."); *Am. Eagle Ins. Co. v. Thompson*, 85 F.3d 327, 329

(8th Cir. 1996) (hearing appeal of case "tried to a jury which was instructed to answer a single factual question-whether Thompson was an employee of Arkansas Air at the time of the accident"); *Lumber Mut. Cas. Ins. Co. of N.Y. v. Stukes*, 164 F.2d 571, 573 (4th Cir. 1947) (holding in a declaratory judgment action, where an exclusion barred coverage for bodily injury of any employee while engaged in employment, that whether the employee was acting within the course of his employment was a question for the jury).

### B.     Analysis

At oral argument, Ms. Robinson's counsel left to this Court the discretion of whether or not to proceed with a jury trial or bench trial. Further, Ms. Robinson "does not oppose . . . a bench trial on all issues." [Resp. in Opp. to Mot. to Strike, Doc. # 81, at 2.] At this time, the Court will reserve ruling on this issue. In the event the Court decides to proceed with a bench trial, the Court will impanel an advisory jury pursuant to Federal Rule of Civil Procedure 39(b).

## IV.    Motion in Limine [Doc. # 76]

Auto-Owners has also filed a Motion in Limine seeking to exclude the testimony of Officers Godowns and Thompson, and adopting previous objections made to Defendants' disclosures. Given the Court's ruling on the Motion for Enlargement, it denies the Motion in Limine *without prejudice* to Auto-Owners's right to later raise any issues therein, with the exception of the late disclosure of Officers Godowns and Thompson. However, any future motion in limine shall include within the motion all grounds and argument, rather than cross-referencing various portions of the docket.

## Conclusion

The Court, having thoroughly reviewed the various motions in light of the parties' arguments and the applicable law, rules on the pending motions as follows:

**IT IS ORDERED** that Ms. Robinson's Motion for Enlargement of Time to Identify Witnesses or to Modify Scheduling Order [Doc. # 61] is **GRANTED**. Specifically, the stay in this case is **LIFTED** and the Court issues the following scheduling order:

1. Discovery related to the disclosure of South Carolina Department of Natural Resources Officers Anthony C. Godowns and Andre Thompson, including depositions, shall be conducted no later than **July 26, 2013**.

2. The parties have disregarded this Court's mandatory mediation order. The parties shall conduct mediation no later than **August 10, 2013.**

3. Motions in limine must be filed by **August 12, 2013**, and responses to those motions must be filed by **August 19, 2013**.

4. Attorneys shall meet no later than **August 15, 2013,** for the purpose of exchanging and marking all exhibits. *See* Local Civil Rule 26.07.

5. Parties shall furnish the Court pretrial briefs by **August 22, 2013**.

6. This case is subject to being called for jury selection and trial on or after **August 29, 2013.**

**IT IS ORDERED** that Auto-Owners's Motion for Summary Judgment [Doc. # 56] is **GRANTED** in part and **DENIED** in part. Specifically, it is **ORDERED** that Defendant John Newsome, III was not insured under the general liability policy identified as number 36052741-09 ("Commercial General Policy"), or the commercial umbrella policy identified as number 44-052-741-01 ("Umbrella Policy"). Summary Judgment is **DENIED** as to the garage liability policy identified as number 44-052-741-00 ("Garage Policy").

**IT IS ORDERED** that the Court **RESERVES RULING** on Auto-Owners's Motion to Strike Ms. Robinson's Jury Demand [Doc. # 75]. In the event the Court decides to proceed with a bench trial, the Court will impanel an advisory jury pursuant to Federal Rule of Civil Procedure 39(b).

**IT IS ORDERED** that Auto-Owners's Motion in Limine [Doc. #76] is **DENIED** *without prejudice* to Auto-Owners's right to later raise any issues therein, with the exception of the late disclosure of Officers Godowns and Thompson. However, any future motion in limine shall include within the motion all grounds and argument, rather than cross-referencing various portions of the docket.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell<br>
R. Bryan Harwell<br>
United States District Judge

Florence, South Carolina
June 19, 2013