IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Auto-Owners Insurance Company, | ) | Civil Action No.: 4:12-cv-00447-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| John Henry Newsome, III, and Yvonne | ) | |
| Robinson, Individually and as the Personal | ) | |
| Representative of the Estate of Deagose F. | ) | |
| Robinson, deceased, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | **FINDINGS OF FACT,** |
| of whom | ) | **CONCLUSIONS OF LAW,** |
| | ) | **AND ORDER** |
| John Newsome, III, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| South Carolina Automobile Dealers | ) | |
| Association Self Insured Fund and the | ) | |
| Randolph W. Hope Company, Inc., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |

This matter is before the Court following a bench trial held on September 17, 2013. Having considered the testimony of the witnesses, both in-court and by way of deposition, the exhibits, and arguments of counsel, the Court issues the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure. To the extent that any findings of fact constitute conclusions of law, or vice-versa, they shall be so regarded.

As discussed more fully below, the Court finds that coverage exists for Defendant John Newsome, III ("Newsome III") under the insurance policy between Plaintiff Auto-Owners Insurance

Company ("Auto-Owners") and Newsome Management Company, Inc. ("NMI") because Newsome III was an insured and none of the exclusions argued by Auto-Owners bar coverage. Therefore, Auto-Owners has a duty to defend Newsome III and a duty to indemnify him in the event a judgment is rendered against Newsome III. As to Newsome III's third-party claim against the South Carolina Automobile Dealers Association Self Insured Fund and the Randolph W. Hope Company, Inc. ("Third-Party Defendants"), that claim is dismissed for the reasons also discussed below.

## Background

This declaratory judgment action was filed by Auto-Owners, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 (2006), seeking a declaration that several policies of insurance issued to NMI do not provide liability coverage for Newsome III in connection with a wrongful death action filed in the Court of Common Pleas for the Fourth Judicial Circuit in Darlington County, South Carolina, captioned *Yvonne Robinson, Individually and as the Personal Representative of the Estate of Deagose F. Robinson, Deceased v. John Henry Newsom, III*, No. 2010-CP-16-295 ("Underlying Action"). As a result of this Court's previous ruling on Auto-Owners' Motion for Summary Judgment, the only policy still at issue in this case is a garage liability policy identified as number 44-052-741-00 ("Garage Policy").

Auto-Owners named Newsome III and Yovonne Robinson ("Ms. Robinson"), Individually and as the Personal Representative of the Estate of Deagose F. Robinson, Deceased, as Defendants to this declaratory judgment action. Additionally, Newsome III filed a Third Party Complaint against the Third Party Defendants, arguing that the Third Party Defendants' action of initially denying a workers' compensation claim as to Mr. Robinson does not estop Newsome III from arguing that Mr. Robinson was acting in the course of his employment at the time of the accident at issue.

2

The Underlying Action alleges Newsome III's negligent operation of a watercraft resulted in the death of Mr. Robinson. Both Newsome III and Mr. Robinson were employees of John Newsome, Inc. ("JNI"). JNI owned the watercraft at issue and was an additional named insured under the Garage Policy. Auto-Owners contends that Mr. Robinson's injuries arose out of and occurred in the course his employment, which precludes coverage under the Garage Policy. Newsome III agrees with this position, but Ms. Robinson does not. Alternatively, Auto-Owners argues that the watercraft exclusion prohibits coverage, because the watercraft was being "operated" at the time of Mr. Robinson's death. Conversely, both Ms. Robinson and Newsome III argue that the watercraft was being "serviced or repaired" at the time of Mr. Robinson's death, thus invoking an exception to the exclusion.

**Findings of Fact**[1]

**I.      Parties**

1.      Plaintiff Auto-Owners is a corporation organized under the laws of the State of Michigan qualified to do business in South Carolina. [Pl.'s Compl., Doc. # 1, at ¶ 1.]

2.      Defendant Newsome III is a resident of the State of Florida and the sole defendant in the Underlying Lawsuit. [*Id*. at ¶ 2; Newsome III Answer, Doc. # 14, at ¶ 9.]

3.      Defendant Ms. Robinson, individually and as the personal representative of the Estate of Mr. Robinson, is a citizen and resident of Darlington County, South Carolina and the plaintiff in the Underlying Lawsuit. [Pl.'s Compl., Doc. # 1, at ¶ 3; Ms. Robinson Answer, Doc. # 7, at ¶ 3.]

---

[1] In reaching its Findings of Facts and Conclusions of Law, the Court has relied only on those exhibits that were admitted into evidence and the live testimony to which no party objected or to which an objection was overruled by the Court. Specifically, the Court has not relied on Ms. Robinson's proffered Exhibit 14 – handwritten notes made by Newsome III during his deposition – as the Court initially reserved ruling on its admissibility. Any objection to the admissibility of this or any other challenged exhibit is therefore denied as moot.

4.      Third-Party Defendant South Carolina Automobile Dealers Association Self Insured Fund is a South Carolina trade association which provides workers' compensation insurance and adjusting services. [Newsome III Answer, Doc. # 14, at ¶ 17; Third-Party Defendants Answer, Doc. # 19, at ¶ 5.]

5.      Third-Party Defendant the Randolph W. Hope Company is a South Carolina corporation with its principal place of business in Richland County, South Carolina. [Newsome III Answer, Doc. # 14, at ¶ 19; Third-Party Defendants Answer, Doc. # 19, at ¶ 7.]

## II.     Underlying Lawsuit

6.      In May 2010, Ms. Robinson filed the Underlying Action in the Court of Common Pleas for the Fourth Judicial Circuit in Darlington County, South Carolina. [AO Ex. 3.][2]

7.      The Underlying Complaint alleged that on or about October 7, 2009, Mr. Robinson was a passenger in a "38 foot top gun cigarette boat" driven by Newsome III on Lake Prestwood in Darlington County, South Carolina. [*Id.* at ¶¶ 4–6.]

8.      The Underlying Complaint also alleged that Newsome III was driving the watercraft in an erratic and unsafe manner when Newsome III and Mr. Robinson were thrown into the water, where Mr. Robinson ultimately drowned. [*Id.* at ¶¶ 11–16.]

9.      Newsome III tendered the claim to Auto-Owners for defense and indemnification, and Auto-Owners agreed to defend the Underlying Lawsuit under a reservation of rights. [AO Ex. 2.]

## III.    Workers' Compensation Claim

10.     JNI office manager Virginia Adams ("Adams") credibly testified that the day after the accident, in addition to notifying Auto-Owners of the accident, she submitted a report of injury for

---

[2] At the trial of this case, Auto-Owners introduced, and this Court admitted, various exhibits ["AO Ex. __"], as did Ms. Robinson ["Robinson Ex. __"].

purposes of workers' compensation. [Robinson Ex. 8.]

11.    The Randolph W. Hope Company, based upon its initial investigation shortly after the accident, denied the claim for workers' compensation benefits pending a full investigation. [Robinson Ex. 9.] However, the Workers' Compensation Commission, in its notice of denial to Ms. Robinson, stated that she was not prevented from making a claim for benefits. [Robinson Ex. 10.]

12.    According to the credible testimony of Gail Martin-Davis, an adjuster for the Randolph W. Hope Company, as well as Ms. Robinson, Ms. Robinson did file a claim for workers' compensation, but did so to preserve the workers' compensation statute of limitations and without waiving her right to pursue her civil lawsuit.

13.    There is no evidence in the record that any further action has proceeded regarding any claim for workers' compensation, or that the workers' compensation commission has made a final ruling regarding any claim.

**IV.**    **Policy at Issue**

14.    The Garage Policy, which was issued to NMI, provides $1 million in coverage for "those sums that [an insured] become[s] legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." [AO Ex. 1 at 7.][3]

15.    Section I of the Garage Policy defines "insured" to mean "any person or organization qualifying as such under SECTION III - WHO IS AN INSURED." [AO Ex. 1 at 3.]

16.    The relevant portion of Section III describes an insured as follows:

       SECTION III - WHO IS AN INSURED

_____

[3] The Garage Policy was entered into evidence as Plaintiff's Exhibit 1. However, the pages were not Bates labeled or otherwise sequentially numbered. Thus, in some instances there are no page numbers and in other instances identical page numbers exist in different sections throughout the Policy.

A.     With respect to operations in your business as described under SECTION II - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. COVERAGE, a. Bodily Injury And Property Damage Liability (Other Than Auto), COVERAGE B AND COVERAGE C:

    1.     If you are designated in the Declarations as:

    . . . .

        d.     An organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors.

    . . . .

    2.     Each of the following is also an insured:

        a.     Your employees, . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . . However, none of these employees . . . are insureds for bodily injury . . .

        (1)     . . . to a co-employee while in the course of his or her employment or performing duties related to the conduct of your business . . . .

[AO Ex. 1 at 23.]

17.     The Garage Policy specifically designates NMI, JNI and John H. Newsome, Jr. ("Newsome Jr.") as named insureds under the Policy. [*See* AO Ex. 1; Form 59270, Doc. # 1-3, at 3.]

18.     The Garage Policy also provides the following relevant exclusions:

    2.     EXCLUSIONS

        a.     Bodily Injury And Property Damage Liability (Other Than Auto) and Bodily Injury And Property Damage Liability (Auto)

        This insurance does not apply to:

    . . . .

        (3)     Any obligations that would be payable under an unemployment compensation law, workers compensation

law, disability benefits law or any similar law.

. . . .

b.    Bodily Injury And Property Damage Liability (Other Than Auto)

This insurance does not apply to:

. . . .

(2)    Bodily injury to:

(a)    An employee of the insured arising out of and in the course of employment by the insured . . . .

[AO Ex. 1 at 9–12.]

19.    The Garage Policy also excludes the following injury stemming from the use of watercraft, which the Policy defines as "a conveyance capable of being used as a means of transportation on water" [AO Ex. 1 at 3]:

(3)    Bodily Injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading and loading or unloading.

This exclusion applies even if the claims against any insured alleged negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the occurrence which caused the bodily injury or property damage involved the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

. . . .

(c)    Any watercraft while being serviced or repaired by any insured . . . .

[AO Ex. 1 at 12.]

## V.    Newsome III is an Insured

20.    A preponderance of the evidence shows that, at the time of Mr. Robinson's accident, Newsome III was an insured under the Garage Policy.[4]

21.    Although Newsome III was not a named insured under the Garage Policy, he nonetheless qualifies as an insured so long as he was an employee acting "within the scope of his employment by [JNI] or while performing duties related to the conduct of [JNI's] business . . . ." [AO Ex. 1 at 23.]

22.    At a hearing on Auto-Owners' Motion for Summary Judgment, the parties all appeared to

---

[4] In the discovery of this case, to include his deposition, Newsome III has invoked the Fifth Amendment and refused to answer questions about the accident at issue. During the trial in the matter, counsel for Newsome III conceded that were Newsome III to testify, he would invoke the Fifth Amendment and refuse to answer any questions. At the bench trial in this case, Ms. Robinson sought a negative inference against Auto-Owners based upon Newsome III's failure to testify in the case. The Court, which reserved ruling on this issue, denies Ms. Robinson's request and declines to give any party a negative inference based upon Newsome III's invocation of the Fifth Amendment in this case. First, the limited Fourth Circuit cases applying a negative inference based upon a party's invocation of the Fifth Amendment make clear the inference is permissive and almost exclusively apply the inference against the party asserting the Fifth Amendment. *See, e.g.*, *Burrell v. Virginia*, 395 F.3d 508, 515 (4th Cir. 2005); *Morley v. Cohen*, 888 F.2d 1006, 1012 (4th Cir. 1989); *In re Grand Jury Subpoena*, 836 F.2d 1468, 1471–72 (4th Cir. 1988); *In re Vu*, 366 B.R. 511, 518–19 (D. Md. 2007)*; Polacsek v. Debticated Consumer Counseling, Inc.*, 413 F. Supp. 2d 539, 551 (D. Md. 2005). Here, Ms. Robinson seeks to apply a negative inference to Auto-Owners – a third party. Second, even if this Court were to apply the test advocated by Ms. Robinson, which is applied by some courts outside the Fourth Circuit, a negative inference would still be inappropriate in this case. Most of the courts that have imputed adverse Fifth Amendment inferences from one party to another have done so where there is a close family or business relationship between the person who exercised the Fifth Amendment right and the individual against whom an adverse inference is drawn. *See, e.g.*, *LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997) (father/daughter); *Brink's, Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983) (employer/employee); *RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 278 (3d Cir.1986) (employer/employee); *Cerro Gordo Charity v. Fireman's Fund Amer. Life Ins*. Co., 819 F .2d 1471, 1481 (8th Cir. 1987) (charitable organization/former director of organization). The relationship between Newsome III and his employer's insurance company is simply not the close family or business relationship envisioned by these cases.

concede that Newsome III was acting within the scope of his employment with JNI at the time of Mr. Robinson's accident, and the parties at least conceded that there was no evidence in the record to contradict this finding. [Order on Summ. J., Doc. # 85, at 10.] Additionally, the Court held as much in its Order on Summary Judgment, and no party filed a Motion to Reconsider this holding. [*Id.*]

23. Auto-Owners alleged in its Complaint that "the incident occurred while . . . [Newsome III was] acting in the course and scope of [his] employment . . . ." [Auto-Owners Compl., Doc. # 1, at ¶ 19.] In his Answer, Newsome III acknowledged the same. [Newsome III Answer, Doc. # 14, at ¶ 15.]

24. At trial, Auto Owners appeared to take the position that, based on the trial testimony, Newsome III was not acting within the scope of his employment by JNI and not performing duties related to the conduct of JNI's business. To the extent Auto-Owners attempts to revoke its earlier concession, a preponderance of the evidence nonetheless shows that Newsome III was acting within the scope of his employment at the time of Mr. Robinson's accident.

25. Newsome Jr., JNI's president, credibly testified that Newsome III mostly ran the used car department, but that he would occasionally buy and sell boats on behalf of JNI.

26. JNI office manager Adams credibly testified that the watercraft at issue, which was owned by JNI,[5] had just come back from engine work on the day Newsome III took it to Lake Prestwood.

---

[5] In 2011, the Honorable Margaret B. Seymour granted summary judgment for an insurance company in a related declaratory judgment action regarding a policy covering the watercraft at issue in this case. *See Am. Modern Home Ins. Co. v. Newsome et al.*, No. 2:10-CV-0505-MBS, Doc. # 67, at 7–8 (D.S.C. filed May 3, 2011) ("American Modern Action"). Judge Seymour specifically ruled that JNI purchased the watercraft and always held title to it, and that although the application said the watercraft would not be used for commercial purposes, the "entire purpose" of purchasing the watercraft was to repair it and sell it for profit. *Id.* Although Auto-Owners was not a party to the American Modern Action,

27.     Newsome Jr. credibly testified that on October 7, 2009, the date of the accident at issue, engine work was being performed on the watercraft.

28.     Several exhibits entered into evidence further show that the watercraft underwent numerous engine repairs shortly before October 7, 2009. [Robinson Ex. 17.]

29.     Newsome Jr. also credibly testified that Newsome III, on JNI's behalf, planned to sell the watercraft for profit once it was repaired.

30.     South Carolina Department of Natural Resources ("DNR") Officer Andrew Godowns ("Godowns"), who spoke with Newsome III after responding to the accident at issue,[6] credibly

---

both Newsome III and the Estate of Mr. Robinson were defendants in that action, and no party appealed Judge Seymour's order. Further, both Adams and Newsome Jr. credibly testified that JNI owned the watercraft.

[6] At the bench trial in this matter Auto-Owners argued that Newsome III's statements to, and in the presence of, the DNR officers constituted inadmissible hearsay. As it did at the bench trial, the Court rejects Auto-Owners's hearsay argument One, the statement is not hearsay as it is being offered as the admission of a party-opponent. *See* Fed. R. Evid. 801(d)(2). While Newsome III is Ms. Robinson's co-Defendant in the current action, he is the opponent in the Underlying Action. Moreover, at least in the criminal context, courts in other circuits have held this type of co-defendant testimony to be admissible under Rule 801. In *United States v. Palow*, 777 F.2d 52, 55 (1st Cir. 1985), the Court explained as follows:

> The requirement of Rule 801(d)(2)(A) that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them. *See* 4 Wigmore, Evidence § 1048, p. 5 (Chadbourn rev. 1972). Rule 801(d)(2)(A) simply requires that the admission at issue be contrary to a party's position at trial. *Butler v. Southern Pacific Co.*, 431 F.2d 77, 80 (5th Cir. 1970), *cert. denied*, 401 U.S. 975 (1971). It does not matter that the admission has been introduced through the testimony of a co-defendant testifying on his own behalf. *United States v. Ramirez*, 710 F.2d 535, 547 (9th Cir. 1983).

Here, Ms. Robinson is offering the statement of Newsome III and not her own statement or the statement of her husband. Further, the statement of Newsome III is certainly contrary to his position that both he and Mr. Robinson were acting within the scope of their employment at the time of the accident. Further, even if the party-admission rule were not applicable and

testified that Newsome III told Godowns that he was on Lake Prestwood to "test drive" the watercraft at issue.

31.     DNR Officer Andre Thompson also credibly testified that Newsome III said that the watercraft had some work done and that Newsome III was going to test those repairs.

32.     Thus, the credible testimony and evidence show that JNI employee Newsome III took the JNI-owned watercraft to Lake Prestwood to conduct a test drive as part of repairing the watercraft so that Newsome III, on behalf of JNI, could ultimately sell the watercraft for profit.

33.     For the above reasons, a preponderance of the evidence shows that, at the time of Mr. Robinson's accident, Newsome III was an employee acting within the scope of his employment with JNI and an employee performing duties related to the conduct of JNI's business. Therefore, a preponderance of the evidence shows Newsome III was an insured under the Garage Policy.

**VI.      Mr. Robinson was not in the Course of Employment**

34.     Auto-Owners has failed to prove by a preponderance of the evidence that coverage is excluded under either of the Garage Policy's provisions barring coverage for injury to an employee.

35.     Under the Garage Policy, there are two provisions that bar coverage of bodily injury to an

---

Newsome III's statements constituted hearsay, the Court finds it is also admissible under the residual exception contained in Rule 807. Specifically, the statements have "circumstantial guarantees of trustworthiness" as they were made to – and in the presence of – a third-party law enforcement officer shortly after the boating accident. The statement has at least as much trustworthiness as a statement of a party opponent. Additionally, the statement is also being offered as evidence of a material fact – whether Mr. Robinson was acting within the course of his employment – and it is the most probative evidence on this point given that the only other person on the watercraft, Newsome III, has refused to testify. For these reasons, admitting the statement would also serve "the purposes of [the Rules of Evidence] and the interests of justice." *See* Fed. R. Evid. 807(a).

employee.[7] The first provision, the so-called co-employee exclusion, states that an employee is not insured for bodily injury to a co-employee while the co-employee is in the course of his or her employment[8] or performing duties related to the conduct of the business. [AO Ex. 1 at 23.] The

---

[7] The first provision barring coverage for bodily injury to a co-employee is listed underneath the definition of an insured, as opposed to the exclusions section of the Garage Policy. [*See* AO Ex. 1 at 23.] Despite its placement, this provision still operates as an exclusion and thus Auto-Owners has the burden of proving its applicability. First, Auto-Owners referred to, treated the provision as, an exclusion during the bench trial. Second, for a provision in an insurance contract to operate as an exclusion it need not specifically be labeled as such. By definition, an exclusion is a "provision which eliminates coverage where were it not for the exclusion, coverage would have existed." Black's Law Dictionary (6th ed.1990); *see also Carolina Materials, LLC v. Continental Cas*. Co./CNA Ins., No. 3:08-cv-158, 2009 WL 1346121, at *3 (W.D.N.C. May 12, 2009) (applying similar definition and finding that a provision was an exclusion even though it was listed as an endorsement); *Fed. Ins. Co. v. Stroh Brewery Co.*, 35 F. Supp. 2d 650, 656 (N.D. Ind. 1998) (applying identical definition of exclusion and holding that "[t]his definition may include many contractual provisions upon which a defense against coverage may be based which are not specifically labeled 'exclusions' in the insurance contract"). The provision at issue here plainly eliminates coverage that would have otherwise existed. Third, another district court in the Fourth Circuit has treated nearly identical language as an exclusion. *Cowan Systems, Inc. v. Harleysville Mut. Ins. Co.*, No. Civ. CCB–05–217, 2005 WL 2453002, at *9 (D. Md. Sept. 30 2005) ("The exclusion stated that while employees counted as an 'insured,' employees were not covered for injuries to co-employees in the course of employment."). Even if the Court did not treat the language as an exclusion, as noted herein, the greater weight of the evidence shows that Mr. Robinson was not acting in the course of his employment when he was injured.

[8] At the bench trial Auto-Owners argued that, assuming Newsome III was an insured and Mr. Robinson was not acting in the course of his employment with JNI, the language of the co-employee exclusion would still bar coverage. Treating Newsome III as the "emlployee," and Mr. Robinson as the "co-employee," Auto-Owners argues that the language of the co-employee exclusion should be read as follows: an employee (Newsome III) is not an insured when the employee (Newsome III) causes bodily injury to a co-employee (Mr. Robinson) while in the course of the employee's (Newsome III's) employment. There are several problems with Auto-Owners' argument. First, Auto-Owners first raised this argument during the trial phase of the case, having never raised it during the many filings and preliminary hearings in the matter. Second, the construction ignores the plain language of the Garage Policy. Under the heading "[e]ach of the following is an insured," the first enumerated paragraph states that employees acting in the scope of their employment are insureds. [AO Ex. 1 at 23.] The last sentence then explains that these employees are nonetheless uncovered for bodily injury to a number of discrete groups. [*Id.*] In the next separate paragraph, the

second provision excludes coverage for bodily injury to an employee of the insured arising out of and in the course of his employment. [AO Ex. 1 at 12.]

36.     Thus, if Mr. Robinson was not acting in the course of his employment[9] with JNI at the time of the accident at issue, or if Mr. Robinson's injuries did not arise out of and in the course of his employment, then the exclusions regarding bodily injury to an employee do not bar coverage.

37.     According to the credible testimony of Adams, Mr. Robinson was a minium-wage employee who worked in the detail shop for JNI.

38.     Though there was some testimony that Mr. Robinson occasionally left JNI's facilities to perform other odd jobs or run errands, Adams, Newsome Jr., and Ms. Robinson all credibly testified that Mr. Robinson was primarily responsible for washing, detailing, or otherwise cleaning vehicles at JNI's facilities in Hartsville, South Carolina.

39.     There was no evidence that Mr. Robinson ever performed, or was qualified to perform,

---

Policy lists the following three groups: the named insured and its partners or members, a co-employee in the course of his employment, and volunteer workers performing duties related to the business. [*Id.*] The Policy clearly intends to preclude coverage for bodily injury to a co-employee while in the course of the co-employee's employment. Any other reading ignores the structure of the co-employee exclusion. Third, at best Auto-Owners has created an ambiguity, which must be construed in favor of coverage.

[9] As discussed in the Conclusions of Law, whether Mr. Robinson was in the course of his employment and whether Mr. Robinson was performing duties related to the conduct of the business require essentially the same showing. In determining whether an employee is acting "in the course of employment," South Carolina courts generally ask whether a "'servant is doing some act in furtherance of the master's business.'" *S.C. State Budget & Control Bd., Div. of Gen. Serv., Ins. Reserve Fund v. Prince*, 304 S.C. 241, 246, 403 S.E.2d 643, 646 (1991) (quoting *Crittenden v. Thompson–Walker Co.*, 288 S.C. 112, 115–16, 341 S.E.2d 385, 387 (Ct. App.1986)); *see also Auto Owners Ins. Co. v. Personal Touch Med Spa, LLC*, 763 F. Supp. 2d 769, 782 (D.S.C. 2011) (applying same test under South Carolina law). On the other hand, South Carolina courts have concluded that "the term 'arising out of' when used in an insurance policy exclusion should be narrowly construed to mean 'caused by.'" *Owners Ins. Co. v. Clayton*, 364 S.C. 555, 561, 614 S.E.2d 611, 614 (2005) (citing *McPherson v. Michigan Mut. Ins. Co.*, 310 S.C. 316, 320, 426 S.E.2d 770, 771 (1993)).

repairs or test drives in either vehicles or watercraft.

40.     Mr. Robinson's time card for October 7, 2009, shows a clock-in time of 7:57 a.m., a clock-out time for lunch of 1:15 p.m., a clock-in time from lunch of 1:58 p.m., and a handwritten clock-out time of 5 p.m. [AO Ex. 5.]

41.     Although the time card may seem to indicate Mr. Robinson was clocked in at the time of his accident, the following evidence indicates that he may not have been on the clock when he left for Lake Prestwood: (1) there was no testimony or evidence that anyone saw Mr. Robinson personally clock in or clock out; (2) Mr. Robinson's time of death was approximately 3 p.m., thus he could not have been working until 5 p.m. as his time card indicates [AO Ex. 7.]; (3) Adams admitted that she wrote 5 p.m. as a clock-out time on Mr. Robinson's time card; and (4) Ms. Robinson credibly testified, and cell phone records verify, that she was on the phone with Mr. Robinson for twenty-two minutes beginning at 12:51 p.m., and again for eighteen minutes beginning at 2:02 p.m. [Robinson Ex. 15.]

42.     The undisputed testimony also shows that Mr. Robinson was in uniform on October 7, 2009. However, no party appears to dispute, and there is no evidence to contradict, that Mr. Robinson worked the morning of October 7, 2009. The issue is whether, *at the time of the accident at issue*, Mr. Robinson was acting in the course of his employment with JNI or whether Mr. Robinson's injuries arose out of and in the course of his employment.

43.     Adams credibly testified that, although she was not personally aware of Mr. Robinson taking a specific afternoon off, Mr. Robinson did not always work forty hours per week and that he sometimes worked less. Adams also agreed with Ms. Robinson's counsel that whether he worked forty hours per week depended on the week and what had to be done.

44.     In fact, Newsome Jr. credibly testified that he did not see Mr. Robinson the afternoon of the accident and he had no knowledge of whether Mr. Robinson was performing duties on behalf of JNI while at Lake Prestwood. Adams also credibly testified that she had no knowledge of what Mr. Robinson was doing on the watercraft the day of the accident.[10]

45.     Because Newsome III has invoked the Fifth Amendment and refused to testify or respond to discovery in this matter, the primary evidence before the Court about why Mr. Robinson was aboard the watercraft on Lake Prestwood comes by way of Newsome III's statements to, and in the presence of, the DNR officers who responded to the accident scene.

46.     According to the credible testimony of Thompson, Newsome III said nothing about Mr. Robinson performing any work on the watercraft.

47.     Godowns credibly testified that he spoke with Newsome III after arriving at the accident scene. Godowns further credibly testified that, regarding why Mr. Robinson was on the watercraft, Newsome III said that Mr. Robinson was there for a "joy ride." Further, based on Godowns' credible testimony, Newsome III said that Mr. Robinson had "loved" and "was crazy" about the watercraft, and that Mr. Robinson had therefore come along simply to take a ride on the watercraft.

48.     For all of the above reasons, Auto-Owners has failed to prove by a preponderance of the evidence that, at the time of the accident at issue, Mr. Robinson was acting in the course of his employment with JNI, performing duties related to the conduct of JNI's business, or that Mr.

---

[10] Newsome Jr. testified that, given the size of the watercraft at issue, it would take at least two people to maneuver the watercraft. Thus, Auto-Owners argues that Mr. Robinson was at Lake Prestwood to assist Newsome III, who in turn was at Lake Prestwood in furtherance of JNI's business. However, this does not change the fact that Newsome III said Mr. Robinson was there for a joy ride, and there is no evidence that Mr. Robinson was familiar enough with watercraft to be of any assistance. Additionally, Godowns and Thompson testified that, at some point on the day in question, there was another person with Newsome III at Lake Prestwood.

Robinson's injuries arose out of and in the course of his employment. In contrast, the greater weight of the evidence shows that, while he was at Lake Prestwood, Mr. Robinson was not acting in the course of his employment, was not performing duties related to the conduct of JNI's business, and that Mr. Robinson's injuries did not arise out of and in the course of his employment. Therefore, the provisions of the Garage Policy regarding bodily injury to an employee do not exclude coverage.

## VII.    Exception to the Watercraft Exclusion is Applicable

49.    Auto-Owners has proven by a preponderance of the evidence, and no party appears to dispute, that the boat at issue was a watercraft as defined by the Garage Policy. The boat was plainly "capable of being used as a means of transportation on water." [*See* AO Ex. 1 at 3.]

50.    Although the Garage Policy excludes bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . watercraft owned or operated by or rented or loaned to any insured," the exclusion does not apply to "[a]ny watercraft while being serviced or repaired by any insured . . . ." [AO Ex. 1 at 12.]

51.    A preponderance of the evidence shows that the exception to the exclusion is applicable in this case.

52.    As discussed above, there was ample evidence that the watercraft needed and received major repairs and that Newsome III took the watercraft to Lake Prestwood on October 7, 2009, to test those repairs. [*See* Findings of Fact ¶¶ 26–32.]

53.    The credible testimony and evidence also shows that, while Newsome III was operating the watercraft at the time of the accident, this "operation" amounted to a test drive as part of repairing or servicing the watercraft.

54.    For the reasons stated above, a preponderance of the evidence shows that the watercraft at

issue was being "serviced or repaired" while on Lake Prestwood on October 7, 2009, and thus the exception to the watercraft exclusion applies. Because the exception applies, the watercraft exclusion does not bar coverage.

## Conclusions of Law

### I.    Applicable Law

In an action for declaratory judgment proceeding under South Carolina law,[11] whether an insurer has a duty to defend is generally determined based on the allegations in the complaint[12] from the underlying lawsuit. *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 382 S.C. 535, 542, 677 S.E.2d 574, 578 (2009). In contrast, an insurer's duty to indemnify is based on evidence found by

---

[11] The parties agree that South Carolina law governs this dispute. Additionally, the substantive law of the forum state – South Carolina – intentionally casts a wide net to ensure that insurance disputes affecting South Carolina interests, such as the one at issue in this matter, are decided under South Carolina law. *See* S.C. Code Ann. § 38-61-10 (Supp. 2003).

[12] As this Court noted when ruling on Auto-Owners' Motion for Summary judgment, the Complaint in the Underlying Action was silent as to whether Mr. Robinson was acting within the course of his employment at the time of the accident and the Complaint did not state whether the watercraft was being "serviced or repaired," an exception to the watercraft exclusion. However, the Complaint's silence on these two points also indicates that Mr. Robinson may not have been acting within the scope of his employment and that the watercraft may have been test-driven as part of a "service or repair" – issues the Court has resolved herein. As the Fourth Circuit has explained when applying similar substantive law, "[i]f a complaint, however ambiguous, may be read as premising liability on alternative grounds, and either ground states liability potentially or arguably covered by the policy, the insured is entitled to a defense." *Donnelly v. Transp. Ins. Co.*, 589 F.2d 761, 767 (4th Cir. 1978). Further, the Court must also look to the facts known by Auto-Owners, which appear to include the nature of Mr. Robinson's work and the reasons the watercraft was on the lake. As the South Carolina Supreme Court has ruled, "[t]he instant case provides such a scenario given [the insurance company] presented . . . facts . . . that were not initially known to [the underlying plaintiff] at the time she filed her Complaint[]." *Clegg*, 377 S.C. at 657–58, 661 S.E.2d at 798; *see also USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 656, 661 S.E.2d 791, 798 (2008) (holding that the existence of a duty to defend is "not strictly controlled by allegations" in a complaint but "may also be determined by facts outside of the complaint that are known by the insurer").

the fact finder. *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388–89 (4th Cir. 2001) (citing *Jourdan v. Boggs/Vaughn Contracting, Inc.*, 324 S.C. 309, 476 S.E.2d 708 (Ct. App. 1996)).

South Carolina law also subjects insurance polices "to the general rules of contract construction." *See Owners Ins. Co. v. Clayton*, 364 S.C. 555, 560, 614 S.E.2d 611, 614 (2005); *M & M Corp. of S.C. v. Auto-Owners Ins. Co.*, 390 S.C. 255, 259, 701 S.E.2d 33, 35 (2010). Although a court must give policy language its plain, ordinary, and popular meaning, the terms of an insurance policy must be construed most liberally in favor of the insured. *M & M Corp.*, 390 S.C. at 259, 701 S.E.2d at 35; *B.L.G. Enter., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999); *Rhame v. Nat'l Grange Mut. Ins. Co.*, 238 S.C. 539, 544, 121 S.E.2d 94, 96 (1961). Where the words of a policy are ambiguous, or where they are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured. *Id*.

It is the insured's burden[13] to establish that a claim falls within the coverage of an insurance

---

[13] Newsome III, the insured under the Garage Policy, argues that at the time of the accident at issue, he was acting within the scope of his employment by JNI, and that the watercraft at issue was being "serviced or repaired" at the time. Ms. Robinson takes the same position on these issues. However, Newsome III rejects Ms. Robinson's contention that Mr. Robinson *was not* acting in the course of his employment with JNI at the time of the accident and therefore the exclusions relating to bodily injury to employee are inapplicable. Because this is an exclusion, Auto-Owners must prove its applicability regardless of Newsome III's position. Moreover, the Court can find no authority for the proposition that Ms. Robinson, who seeks to ultimately benefit under the Garage Policy and was made a party to this declaratory judgment action by Auto-Owners, cannot herself argue in favor of coverage and against any applicable exclusions. In fact, the opposite proposition appears true. *See, e.g., Breezewood Of Wilmington Condo. Homeowners' Ass'n, Inc. v. Amerisure Mut. Ins. Co.*, 335 F. App'x 268, 270 (4th Cir. 2009) (applying similar state law and holding that the party seeking to benefit under an insurance contract bears the burden of showing coverage); *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) ("A dispute between a liability insurer, its insured, and a third party with a tort claim against the insured over the extent of the insurer's responsibility for that claim is an 'actual controversy' within the meaning of the federal Declaratory Judgment Act, even though the tort claimant has not yet reduced his claim against the insured to judgment."), *overruled on other grounds, Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

contract. *Jensen v. Selective Ins. Co. of Se.*, No. 4:12–cv–02133–RBH, 2013 WL 3148341, at *2 (D.S.C. June 19, 2013) (citing *Gamble v. Travelers Ins. Co.*, 251 S.C. 98, 102 160 S.E.2d 523, 525 (1968)). Alternatively, the insurer shoulders the burden of establishing the exclusions to coverage and the exclusion is construed "most strongly" against the insurer. *Id*. (citing *Boggs v. Aetna Cas. & Sur. Co.*, 272 S.C. 460, 252 S.E.2d 565, 568 (1979)). However, an insured party bears the burden of proving an exception to an exclusion. *Ross Development Corp. v. PCS Nitrogen Inc*., Nos. 12–2059, 12–2454, 2013 WL 2440844, at *3 (4th Cir. June 6, 2013) (citing *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 594 S.E.2d 455, 460 n.5 (2004)).

**II.**     **Coverage and Exclusions**

Under the Garage Policy, Auto-Owners has a duty to defend Newsome III and a duty to indemnify him in the event a judgment is rendered against him in the Underlying Action because Newsome III was an insured and none of the exclusions argued by Auto-Owners bar coverage.

A.     <u>Newsome III is an Insured</u>

As explained previously, although Newsome III was not a named insured under the Garage Policy, he nonetheless qualifies as an insured so long as he was an employee acting "within the scope of his employment by [JNI] or while performing duties related to the conduct of [JNI's] business . . . ." [AO Ex. 1 at 23.]

In determining whether an employee is acting "in the course of employment," South Carolina courts generally ask whether a "'servant is doing some act in furtherance of the master's business.'" *S.C. State Budget & Control Bd., Div. of Gen. Serv., Ins. Reserve Fund v. Prince*, 304 S.C. 241, 246, 403 S.E.2d 643, 646 (1991) (quoting *Crittenden v. Thompson–Walker Co.*, 288 S.C. 112, 115–16, 341 S.E.2d 385, 387 (Ct. App.1986)); *see also Auto Owners Ins. Co. v. Personal Touch Med Spa,*

*LLC*, 763 F. Supp. 2d 769, 782 (D.S.C. 2011) (applying same test under South Carolina law).

At the time of Mr. Robinson's accident, Newsome III was plainly doing some act in furtherance of JNI's business. [*See* Findings of Fact ¶¶ 22–33.] Newsome III would sometimes sell boats for JNI and JNI owned the watercraft at issue. The watercraft at issue was in need of repair and returned from major engine work just before October 7, 2009. Newsome III planned to sell the watercraft for JNI once it was repaired, and Newsome III took the watercraft to Lake Prestwood to conduct a test drive as part of repairing the watercraft. The greater weight of the evidence shows that at the time of Mr. Robinson's accident, Newsome III was within the scope of his employment and performing duties related to the conduct of JNI's business. Newsome III is an insured under the Garage Policy.

### B. Mr. Robinson was not in the Course of Employment

Conversely, Auto-Owners has failed to show by a preponderance of the evidence that either of the Garage Policy's exclusions regarding bodily injury to an employee are applicable in this case. The greater weight of the evidence shows the opposite: during his time aboard the watercraft at Lake Prestwood and certainly at the time of the accident at issue, Mr. Robinson was not acting in the course of his employment with JNI.[14]

---

[14] Under the Garage Policy, coverage would also be excluded if Mr. Robinson was performing duties related to the conduct of JNI's business or if Mr. Robinson's injuries arose out of and in the course of his employment. [AO Ex. 1 at 12, 23.] Whether Mr. Robinson was acting within the course of his employment requires examining whether he was performing any act in furtherance of JNI's business – which is analogous to whether Mr. Robinson was performing duties related to the conduct of JNI's business. As discussed herein, Mr. Robinson was not performing any act in furtherance of JNI's business. Further, South Carolina courts have concluded that "the term 'arising out of,' particularly when used in an insurance policy exclusion, should be narrowly construed to mean 'caused by.'" *Owners Ins. Co. v. Clayton*, 364 S.C. 555, 561, 614 S.E.2d 611, 614 (2005) (citing *McPherson v. Michigan Mut. Ins. Co.*, 310 S.C. 316, 320, 426 S.E.2d 770, 771 (1993)). Given that Mr. Robinson was on a joy ride and not performing any act in furtherance of JNI's business, his injury was certainly not

As discussed in detail above, Mr. Robinson was not performing any act in furtherance of JNI's business.[*See* Findings of Fact ¶¶ 34–48.] Mr. Robinson was a low-level employee whose primary job was to work on JNI's premises detailing or washing cars. He was also known to sometimes take time off during the week. He never performed, or was qualified to perform, repairs or test drives in either vehicles or watercraft. None of the JNI personnel who testified at trial could explain why Mr. Robinson went to Lake Prestwood with Newsome III. This indicates that, as Newsome III himself told the DNR officer, Mr. Robinson was there for a "joy ride" because he "loved" the watercraft and was "crazy" about it. Because Mr. Robinson was not acting in the course of his employment with JNI, was not performing duties related to the conduct of JNI's business, and Mr. Robinson's injuries did not arise out of and in the course of his employment with JNI, the exclusions relating to bodily injury suffered by an employee do not bar coverage in this case.

C.      Exception to the Watercraft Exclusion is Applicable

The boat at issue was a watercraft as defined by the Garage Policy. [*See* AO Ex. 1 at 3 (defining "watercraft" as  "a conveyance capable of being used as a means of transportation on water").] However, the Garage Policy's watercraft exclusion contains a specific exception indicating that "[t]his exclusion does not apply to . . . [a]ny watercraft while being serviced or repaired by any insured." [*Id.*]

As noted previously, the record shows – and it appears undisputed – that the watercraft was being operated on Lake Prestwood at the time of the accident. [*See* Findings of Fact ¶¶ 50–54.] It is also clear from the record that the watercraft was being test driven on the lake subsequent to major engine work.

_____

"caused by" his employment.

Auto-Owners argued at trial that the exception to the exclusion is not applicable because the watercraft was being "operated," and not "serviced or repaired," at the time of Mr. Robinson's death. Auto-Owners pointed to the language of the watercraft exclusion specifically barring coverage for any "use" of the watercraft, and also pointed out that "use" is defined to include "operation." Thus, according to Auto-Owners, the Garage Policy contemplates providing coverage in the event an injury takes place while the watercraft is being "serviced or repaired," but it does not provide coverage while the watercraft is in "operation."

However, "[t]he meaning of a particular word of phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract." *Schulmeyer v. State Farm Fire & Cas Co.*, 353 S.C. 491, 496, 579 S.E.2d 132, 134 (2003). Here, neither "service" nor "repair" are defined in the Garage Policy. Further, the "service or repair" exception is specifically enumerated beneath the watercraft exclusion, and the watercraft exclusion is only applicable when a watercraft is being used or maintained. It would read the exception out of existence to say it can never apply when a watercraft is being operated, or otherwise in use. Particularly when dealing with major engine work, the common meaning of either "service" or "repair" certainly contemplates a test drive in order to test the efficacy of any new parts and verify that the work was performed properly. This is certainly the case when construing these undefined terms most liberally in favor of coverage. *See M & M Corp.*, 390 S.C. at 259, 701 S.E.2d at 35; *see also Wakefield v. Twin City Fire Ins. Co.*, No. CV054011450, 2007 WL 2200597, at *4 (Conn. Super. Ct. July 5, 2007) (denying summary judgment and noting that " the test drive was part of [plaintiff's] auto repair business because the test drive confirmed the initial diagnosis of [the] automobile and that the specific problem had been remedied by the repairs

performed by the plaintiff"); *Simpson v. Bridgestone/Firestone, Inc.*, No. 93–2082, 1994 WL 171680, at \*1 (D. Kan. April 5, 1994) (noting that national repair chain's manual provided that "a test drive is required for all services").

The evidence in the case, including the credible testimony of the witnesses, shows that Newsome III took the watercraft to Lake Prestwood to conduct a test drive as part of repairing or servicing the watercraft so that JNI could ultimately sell the watercraft for profit. A preponderance of the evidence shows that the watercraft at issue was being "serviced or repaired" while on Lake Prestwood on October 7, 2009, and thus the exception to the watercraft exclusion applies. Because the exception applies, the watercraft exclusion does not bar coverage.

Therefore, because Newsome III was an insured under the Garage Policy, and because none of the exclusions argued by Auto-Owners bar coverage, Auto-Owners has a duty to defend Newsome III  in the Underlying Action and a duty to indemnify him in the event a judgment is rendered against Newsome III in that action.

## III.    **Third-Party Claim**

The Court dismisses Newsome III's Third-Party-Complaint against the Third Party Defendants. [Newsome III Answer, Doc. # 14, at ¶ 9.]

In the Third-Party Complaint, which does not request damages, Newsome III seeks only a declaration that the Third-Party Defendants' action of initially denying JNI's workers' compensation claim[15] as to Mr. Robinson does not estop Newsome III from arguing that Mr. Robinson was acting

---

[15]  Newsome III's Third-Party Complaint appears prompted by Ms. Robinson's Answer to Auto-Owner's Complaint. Ms. Robinson argued that the workers' compensation carrier of JNI specifically denied coverage for Mr. Robinson in regard to the incident which claimed his life. [Robsinon Answer, Doc. # 7, at 7.] Ms. Robinson averred that an administrative decision involving whether Mr. Robinson was in the course and scope of employment had already been determined and JNI was allowed to be part of the process. [*Id*.] As such, Ms. Robinson

in the course of his employment at the time of the accident at issue. [*Id*. at ¶ 21.] At the bench trial, Newsome III appeared to argue, for the first time in this matter, that the Third-Party Defendants are bound by the determinations of this Court. Under either argument, Newsome III's Third-Party Complaint is subject to dismissal.

Regarding the declaration that Newsome III cannot be estopped from arguing that Mr. Robinson was in the course of his employment, no party in this declaratory judgment action actually sought to bind Newsome III to any decision made by the Third-Party Defendants. Similarly, the Court allowed Newsome III the opportunity to argue as such throughout this proceeding, and the Court considered Newsome III's arguments and evidence in reaching its decision herein. In short, the Court never bound Newsome III to any decision made by the Third-Party Defendants. Thus, any declaration that Newsome III is not bound by the decision of the Third-Party Defendants is now moot. The Court also notes that there is no evidence in the record that any final determination has been made regarding any claim for workers' compensation. [*See* Finding of Fact ¶ 13.]

To the extent Newsome III seeks an affirmative order from this Court to bind the Third-Party Defendants to the outcome in this action, this relief was not requested in the Third-Party Complaint. *See, e.g.*, Fed. R. Civ. P. 8 (requiring a plaintiff to include in the complaint a demand for judgment for the relief that the plaintiff seeks); *Alpha Janitorial Serv., Inc. v. GCA Serv. Group, Inc.*, No. 9:07-3254, 2008 WL 2878622, at *1 (D.S.C. July 24, 2008) (limiting plaintiff at trial to allegations in its amended complaint). Further, the determinative ruling in this case is that Auto-Owners has a duty to defend and indemnify under the terms of the Garage Policy because (1) Newsome III is an

---

argued JNI was "specifically estoppe[d] from averring" that Mr. Robinson was in the course and scope of employment at the time of the incident in this case. [*Id*. at 7–8.] The Court notes that JNI is not a party to this action.

insured as he was acting in the course of his employment when the accident at issue occurred, (2) the exclusions relating to bodily injury to an employee are not applicable because Mr. Robinson was not acting in the course of his employment at the time of the accident, and (3) the watercraft exclusion is inapplicable because the watercraft at issue was being "serviced" or "repaired." The Court's ruling speaks for itself and it would be inappropriate for the Court to declare the impact of its ruling beyond the parties to the insurance policy at issue in this case.

Lastly, either request by Newsome III amounts to little more than an advisory opinion because neither resolves any definite or concrete dispute between Newsome III and the Third-Party Defendants regrading any workers' compensation issue or claim. The Supreme Court has explained as follows:

> Our decisions have required that the dispute [in a declaratory judgment action] be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. . . . Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*MedImmune, Inc. v. Genentech*, Inc., 127 (2007) (internal citations and quotations omitted). The Court therefore dismisses the Third-Party Complaint.

### Conclusion

In conclusion, the Court has found that

(1)     John Henry Newsome, III is an insured under the Garage Policy. While at Lake Prestwood and at the time of the accident at issue, Newsome III was an employee acting within the scope of his employment with JNI and performing duties related to the conduct of JNI's business;

(2)     The provisions of the Garage Policy regarding bodily injury to an employee do not exclude coverage. While at Lake Prestwood and at the time of the accident at issue,

25

Deagose F. Robinson was not acting in the course of his employment, was not performing duties related to the conduct of JNI's business, and Mr. Robinson's injuries did not arise out of and in the course of his employment; and

(3) The watercraft exclusion does not bar coverage. The watercraft at issue was being serviced or repaired while on Lake Prestwood on October 7, 2009, and thus the exception to the watercraft exclusion applies.

**IT IS THEREFORE ORDERED** that pursuant to the terms of the Garage Policy, issued by Auto-Owners to Newsome Management Company, Inc. and identified as number 44-052-741-00, coverage exists for Newsome III and Auto-Owners has a duty to defend Newsome III in the Underlying Action and a duty to indemnify Newsome III in the event a judgment is rendered against him in the Underlying Action.

**IT IS ALSO ORDERED** that Newsome III's Third-Party Complaint against the South Carolina Automobile Dealers Association Self Insured Fund and the Randolph W. Hope Company is **DISMISSED**.

This decision concludes this action. The Clerk of the Court is hereby directed to close the case.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
October 25, 2013